**SO ORDERED.**

**SIGNED this 7 day of March, 2016.**

_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:                                             CASE NO. 13-02289-8-DMW

**GERALDENE SUE PERVINE**
                                                   CHAPTER 13
            **DEBTOR**

### ORDER DENYING MOTION TO SELL REAL PROPERTY

This matter comes before the court upon the Motion to Sell Real Property ("Sale Motion") filed by Geraldene Sue Pervine ("Debtor") on January 21, 2016. The court conducted hearings on February 1, 2016 and February 16, 2016 in Raleigh, North Carolina. Jason Watson, Esq. appeared for the Debtor. Based upon the evidence presented, the court makes the following findings of fact and conclusions of law:

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334. The court has the authority to hear this matter pursuant to the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.

2. The Debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code on April 8, 2013.

3. The Debtor and Carl M. Pervine ("Co-debtor") are tenancy by the entirety owners of real property ("Property") located in Wake County, North Carolina with an address of 100 Bristol Bay Court, Cary, North Carolina. At the time of the Debtor's Chapter 13 petition, the Property served as her residence.

4. The Debtor's Schedule A—Real Property provides that the fair market value of the Property at the time of the Debtor's Chapter 13 petition was $159,143.00.

5. The Property is subject to the first priority deed of trust mortgage lien of JPMorgan Chase Bank, National Association ("Chase") in the approximate amount of $62,300.00. The Property is also subject to the second priority deed of trust mortgage lien of Wells Fargo Bank, N.A. ("Wells Fargo") in the approximate amount of $35,000.00. The Debtor's Chapter 13 plan ("Plan"), confirmed by the court on August 29, 2013, provides for the Debtor to make contractual payments directly to Chase and to Wells Fargo and not through the Chapter 13 trustee.

6. In November, 2015, the Debtor moved from the Property, and on December 30, 2015, the court entered an Order granting Chase relief from the automatic stay imposed by 11 U.S.C. § 362 and the co-debtor stay imposed by 11 U.S.C. § 1301 to allow Chase to proceed with foreclosure against the Property.

7. In the Sale Motion, the Debtor requests the court to approve a sale of the Property to TDD Enterprises, LLC ("TDD") for the purchase price of $142,300.00, with TDD taking the Property subject to the liens of Chase and Wells Fargo and being given a whopping "Repair Credit" in the amount of $40,000.00. TDD proposes to assume the loans from Chase and Wells Fargo, although those lenders have not agreed to the assumption. The Sale Motion also proposes that

TDD will pay $9,400.00 as a "reinstatement fee" to bring the mortgages current. Assuming Chase and Wells Fargo agree to the loan assumptions, then after applying the Repair Credit, the Debtor and the Co-debtor will collectively receive approximately $4,500.00 from the proposed sale. A Settlement Statement for the sale indicates that in addition to this $4,500.00, TDD will pay $10,950.00 in closing costs and has already paid a $500.00 deposit. These amounts constitute the only cash funds to be paid by TDD.

8. At the latter hearing, Tatsiana Shtal ("Shtal") with TDD testified regarding the proposed sale and the Repair Credit. Shtal provided the court with a written estimate of $41,307.30 for making the following home improvements to the Property: updating and modernizing the kitchen, bathrooms, and laundry room; repairing the leaking roof; refinishing floors; removing the "popcorn" ceilings; and painting the interior. Shtal suggested that further repairs and updates may be necessary.

9. After completion of home improvements, TDD anticipates re-selling the Property for approximately $190,000.00; however, Shtal was unable to provide the court with any information regarding the value of the Property in its *current* state, without any repairs or updates.

10. The United States Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate, . . ." 11 U.S.C. § 363(b)(1). Pursuant to 11 U.S.C. § 1303, a Chapter 13 debtor has the rights and powers of a trustee under 11 U.S.C. § 363(b).

11. When determining whether to approve a proposed sale of property under 11 U.S.C. § 363(b)(1), courts generally apply a business judgment test which considers whether: "'(1) a sound business purpose exists for the sale; (2) the sale price is fair; (3) the debtor [or trustee] has provided adequate and reasonable notice; and (4) the purchaser has acted in good faith.'" *In re*

3

*Childers*, 526 B.R. 608, 613 (Bankr. D.S.C. 2015) (quoting *In re Shipman*, 344 B.R. 493, 495 (Bankr. N.D.W.Va. 2006)). By applying the business judgment test, a court ensures "that the trustee is making a decision that is not based on self interest [sic] or self dealing [sic], and that the decision to sell is made on an informed basis, in good faith, and in the honest belief that the sale is in the estate's best interest." *Id. See also In re Slate*, 2014 WL 4825365 at *2 (Bankr. E.D.N.C. Sept. 29, 2014) (applying business judgment test for pre-confirmation sale of assets by Chapter 11 debtor).

12. Although the Debtor and the Co-debtor are otherwise facing foreclosure of the Property, the court cannot approve the proposed sale, because the sale terms do not satisfy the business judgment test. Specifically, the court does not believe the price is fair and reasonable or that TDD is proceeding in good faith.

13. Although the stated purchase price is $142,300.00, allowance of the Repair Credit means TDD would actually acquire the property for $102,300.00 ("Acquisition Price"), which is far less than the scheduled value of $159,143.00. TDD was unable to provide any evidence that would controvert this value.

14. Shtal admitted that TDD plans to re-sell the Property for almost $90,000.00 more than the Acquisition Price. The court acknowledges that the Property is probably in need of some repair to make it marketable; however, most of the proposed "repairs" to be made by TDD are merely cosmetic and will not cause such a significant increase in value. Accordingly, the court finds that the proposed Acquisition Price reflects a deflated value and is neither fair nor in the Debtor's best interest.

15. The court is also troubled by the nominal down-payment or equity to be contributed by TDD. TDD speculates it can assume the Chase and Wells Fargo loans, rather than finance the

purchase with its own capital or debt. While the proposed sale does contemplate TDD paying approximately $9,400.00 to bring the loans current and maintaining contractual monthly payments, these payments will simply reduce the indebtedness being assumed and do not amount to a significant investment in the Property by TDD. Essentially, TDD is paying itself with that portion of the purchase price. Offering a desperate debtor a meager $4,500.00 when TDD stands to make a potential $90,000.00 profit will never pass muster in this court.

16. Saying that TDD is opportunistic is too mild of a characterization. The thought of a vulture comes to mind, but acquainting TDD with a vulture disparages that particular avian species. TDD has not made a proposal in good faith and has insulted the Debtor, the bankruptcy process and this court. TDD is not a good faith purchaser for the Property, and the sale is not approved; now therefore,

IT IS ORDERED, ADJUDGED, AND DECREED that the Sale Motion be, and hereby is, denied.

**END OF DOCUMENT**